## Realty Savings Company, et al. v. Southern Asphalt-oilene Road Company.

(Decided April 23, 1918.)

Appeal from Jefferson Circuit Court
(Chancery Branch No. 2).

1.  Municipal Corporations—Improvement of Streets—Discretion—
    Abutting Property.—A city council vested with the authority to

improve streets has a large discretion as to the character of and the material used in the improvement, and unless they act contrary to the provisions of some statute prescribing their powers, or fraudulently or in bad faith or in such way as to constitute spoliation of abutting property, courts will not interfere with their discretion.

2. Municipal Corporations—Street Improvements—Abutting Owners. —Although a city council may have acted, when directing the improvement of a street, in such way as to entitle the abutting property owner to legally object to the work being done, still if he permits the work to be completed by the contractor without taking legal steps to prevent it, he will be deemed to have waived his objections and will be required to pay his proportionate part of the improvement, since good faith requires him to take such action before the contractor in good faith incurs the expense of completing the work.

BENJAMIN F. WASHER, DAVIS W. EDWARDS, EMANUEL LEVI and KOHN, BINGHAM, SLOSS & SPINDLE for appellants.

LAWRENCE S. LEOPOLD, WILLIAM J. O'CONNOR and PENDLETON BECKLEY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

By this suit the appellee, plaintiff below, seeks to enforce a lien against the property of appellants, defendants below, to the extent of apportionment warrants issued to it for the contract price of improving Madison street in the city of Louisville between the center line of 35th street to the center line of Garr's lane. The property of the defendants abuts upon the improved portion of Madison street, and the work was done by the plaintiff under a contract duly entered into after all prior steps had been taken by the council as required by law in making street improvements at the expense of abutting property owners.

The legal question presented is that made by the second paragraph of the answer, which alleges in substance that in the specifications of the ordinance requiring the improvement it is provided that in a portion of the street to be occupied by the street railway between the tracks and two feet on the outside of each rail the material to be used should be granite blocks, and that other portions of the street for its entire width should be improved with bituminous concrete pavement; that the granite blocks provided for the space to be occupied by the street railway track and for two feet outside of each

rail was much more expensive than bituminous concrete pavement, and was no more effective in the construction of a perfect street than the latter material, and that the city council in so providing for the granite blocks was acting in collusion with the street railway company, or someone to whom the franchise for such railway might be sold, by requiring the construction of a solid roadbed at the expense of the abutting property owners, with the fraudulent purpose on the part of the city "to first impose the cost of constructing the roadbed, and giving fixity to the rails to be laid therein, upon adjacent property," so that the purchaser of the franchise "might derive an advantage at the cost of the adjacent property and property holders," or that the city could procure for itself an increased price upon the sale of the franchise because of the already constructed foundation for the roadbed. It is also alleged that prior to the passage of the ordinance requiring the improvement an ordinance was passed providing for a sale of the franchise, but that such sale should not be made until the contract for the improvement of the street had been let. It was also averred with reference to the wrongful provision for granite blocks at the spaces mentioned: "That said material was unnecessary and inappropriate for the carriageway of Madison street at places and between points designated in the ordinance, and the same was provided solely to create a permanent road bed and to secure the better equipment for the purchaser of the franchise and the party owning and operating the street railway to be located in said street;" and, "That a carriageway constructed of bituminous concrete throughout would have made a better street and carriageway for all purposes of the adjacent property and the use to which the same may be put than is a carriageway partly constructed of bituminous concrete and partly of granite blocks as ordained by the ordinance. That the granite block is a disadvantage and detriment to the carriageway aforesaid and serves and can only serve the purpose of improving the road bed and right-of-way of a street car system."

A demurrer filed to that paragraph of the answer was sustained, and defendants declining to plead further the cause was submitted and judgment was rendered granting the relief sought by the petition, and to reverse it defendants prosecute this appeal.

In support of the judgment counsel for appellees insist that the improvement of streets and ways of a city is the exercise of a governmental function, and it is for the municipality to determine how and with what materials the streets are to be constructed; that the exercise of such functions involves discretionary powers vested in public officers which are not subject to judicial control, and if the governing law has been observed the action of the officers vested with such power may not be interfered with by the courts except under express provisions of law or where such officers have acted fraudulently or in bad faith, and that under such rule the averments of the paragraph of the petition to which the demurrer was sustained are insufficient to constitute a defense. The rule no doubt embodies the correct principle of the law as found in text-writers, as well as numerous decisions from this court. Marz v. City of Newport, 173 Ky. 147; Campbell v. Southern Bithulithic Co., 32 Ky. L. R. 799; Duker v. Barber Asphalt Paving Co., 74 S. W. (Ky.) 744; Town of LaGrange v. Overstreet, 141 Ky. 43; Lambert v. Thornberry, 153 Ky. 523; Denton v. Carey-Reed Co., 169 Ky. 54, and authorities therein referred to.

This principle is conceded by counsel for appellant. They insist, however, that the averments in the pleading demurred to are sufficient to show that the city council in the instant case did not in good faith exercise its discretionary powers for the benefit of the public and the property owners along the street in requiring the use of granite blocks for the purposes alleged and not for the betterment of the street, and that such averments are sufficient to show the presence and not "the absence of fraud or collusion" on the part of the city council. In support of their contention we are referred to the cases of Lambert v. Thornberry; Denton v. Carey-Reed Co.; Marz v. City of Newport; Town of LaGrange v. Overstreet, *supra,* and the case of Barfield v. Gleason, 111 Ky. 491.

It must be admitted that the respective contentions upon the point under consideration present to our minds a close question, and one not entirely free from difficulty, but we do not regard its determination as being essential to the upholding of the judgment appealed from.

A rule equally well established in this state in suits of this character is that the property owner will not be

permitted to stand by and allow the street in front of his property to be improved at the instance of the municipality, the contractor to expend his money in making the improvement, the work to be completed and accepted, and the apportionment made upon the faith that the cost was to be a charge upon his property, without first making some legal objection thereto before the work shall have been done. Feahler v. Gosnell, 99 Ky. 380; Richardson v. Mohler, 111 Ky. 408; Preston v. Roberts, 12 Bush 570; Barber Asphalt Pavement Co. v. Garr, 115 Ky. 334; City of Louisville v. Gast, 118 Ky. 570; Mudge v. Walker, 122 Ky. 34; Caperton v. Humpick, 95 Ky. 105, and Elliott on Roads and Streets, sec. 590.

This rule is not denied by the defendants, but it is insisted that it is in the nature of an estoppel, and that such defense can not be enforced upon demurrer but must be pleaded in order for the party relying thereon to obtain the benefit of it. This court, however, in the case of City of Louisville v. Gast, *supra,* held that such conduct on the part of the property owner constituted a waiver of any right which he might have to resist the collection of the price of the improvement as apportioned to his property rather than an estoppel against him.

In the case of Caperton v. Humpick, *supra,* it was held that a mere objection made by the property owner to the contractor at the beginning of or during the progress of the work was insufficient to save him from the consequences of the waiver, and that in order to do so he should manifest his objections by some character of legal proceeding having for its purpose the stopping of the work, unless a valid reason existed for his failure to do so. It is true the defense therein was that Breckinridge street which was being constructed was not a public street, but defendants stood by and permitted the work to be completed without taking steps to test that question, and in its opinion this court said:

"If Breckinridge was not at the time a public street, then the contractor who built the bridge as well as appellee who made the improvements were simply trespassers, and appellants might have, *by legal proceedings,* stopped construction of both, and it seems to us good faith required them *to do so,* if they did not intend to abide by and avail themselves of the benefit thereof, and thus impliedly dedicate the street if not directly."

If good faith on the part of a property owner would require him to take legal proceedings to test the question of whether the street being improved was a public one in order to relieve himself of the consequences of the waiver of that question it would also require of the property owner in a case like this (having no valid excuse) to take such proceedings as may be necessary to settle the question of the bad faith or fraud on the part of the council in ordering the improvement made. A mere notification given to the contractor of the property owner's objections to the work being done ought not to furnish grounds for the contractor to desist from his work, for in many cases such objections might be frivolous, and the contractor who entered into his contract in good faith should not have his work interrupted, nor should the interest of the public in the improvement of the street be postponed upon such unsubstantial objections as the property owner might conceive to be sufficient. He should be required to manifest his objections in more substantial form by some character of legal proceedings suitable for the purpose. In this case no such proceedings were had, since the work was completed and accepted by the city, followed by the issual of the apportionment warrants.

The granite blocks complained of are suitable for and much used in the construction of streets, and while it might be more expensive than other materials, and perhaps not as suitable for the purpose, still such questions under the authorities, *supra,* are in the absence of fraud and bad faith, for the determination of the governing authority who is authorized to have the work done, and its motives or purposes in having it done in a particular manner or with a particular material, if not prohibited by law, and the material is suitable for the purpose, will not be inquired into, especially if the work is completed without proper objections from the property owner.

It was upon this ground that the demurrer was sustained, as we note from the court's opinion in the record, and because of the reasons stated we are disinclined to interfere with his rulings, and the judgment is accordingly affirmed.