## Ormsby v. City of London, and Four Other Cases.

(Decided May 10, 1927.)

### Appeals from Laurel Circuit Court.

1. Municipal Corporations.—Property owners cannot stand by and see contractor improve streets in front of his place under contract with city, until after work has been completed and accepted by city, and then attack proceedings for irregularities which do not render proceedings void, provided city has right to make such contract.

2. Municipal Corporations.—Enacting clause of ordinance for construction of street, worded, "Be it ordained by mayor and city of London as follows," held not sufficiently defective, under Ky. Stats., section 3638, to render ordinance void.

3. Municipal Corporations.—Ordinance requiring property owners to pay three-fourths of cost of construction of street, which was invalid under Ky. Stats., sections 3643-1 to 3643-13, did not prevent city from collecting two-thirds of cost as provided by statute.

4. Municipal Corporations.—Personal judgment cannot be rendered against property owners for cost of construction of street, under Ky. Stats., sections 3643-1 to 3643-13, but city can only enforce its lien against property.

5. Municipal Corporations.—Where property abutting on street is divisible, only so much thereof should be sold to satisfy judgment for cost of construction of street as will satisfy judgment.

W. E. BEGLEY and H. C. CLAY for appellants.

WILLIAM LEWIS & SON for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The five above styled cases have been consolidated and heard together and they will be disposed of in one opinion. They were filed by the city of London, a city of the fifth class, in 1924, to compel the appellants to pay the assessment made against their property for the construction of that part of College street in front of their respective lots. The street was constructed and accepted by the city of London, and the appellants are attacking the proceedings on many grounds.

In the case of Peicke et al. v. City of Covington , 198 Ky. 683, 249 S. W. 1008, this court laid down a rule as follows:

> "We have many times held that a property owner will not be permitted to stand by and allow the street in front of his property to be improved

at the expense of the municipality, or the contractor allowed to expend his money in making the improvement and work to be completed, accepted, and the apportioning of the cost made, without first making some legal objection. This principle is a wholesome and salutary one, placing no ureasonable burden upon the property holder, who may, in the absence of such objection, be presumed to acquiesce in the improvement, while to object, if there be (no) legal ground therefor, saves the municipality an expensive blunder, if blunder it be, and the contractor from needless exertion and expense. Realty Savings Co. v. Southern Asphaltoilene Road Co., 180 Ky. 242 (202 S. W. 679); City of Louisville v. Gast, 118 Ky. 570 (81 S. W. 693); Richardson v. Mehler, 111 Ky. 408 (63 S W. 957); Mudge v. Walker, 122 Ky. 29 (90 S. W. 1046)"

This court has adopted the rule that a property owner cannot stand by and see a contractor improve the streets in front of his place under a contract with the city, until after the work has been completed and accepted by the city, and then attack the proceedings under which the work was done for irregularities which do not render the proceedings void. This rule applies where the city irregularly does something which it had a right to do, but failed to take necessary steps to avoid irregularities. The rule is different when the city undertook to do something that it had no right to do, or did the thing in such a way as to render the act void.

We find 22 separate grounds urged against the validity of the improvement of College street in the city of London, and those grounds which are not discussed in this opinion have been disposed of under the rule above set out.

This leaves, however, other grounds which are urged for reversal that demand our consideration. The first of these grounds is that the ordinance under which the street was constructed is invalid, because it had no enacting clause. Section 3638, Ky. Stats., provides that all ordinances in cities of the fifth class shall have an enacting clause, and it has been held by this court that an ordinance without an enacting clause is void. Bates v. City of Monticello, 173 Ky. 244, 190 S W. 1074; Town of Nortonville v. Woodward, 191 Ky. 730, 231 S. W. 224.

It is not contended that the ordinance in question had no enacting clause, but it is insisted that the enacting clause fails to come up to the requirement of the aforesaid section of the Statutes. The enacting clause, as it appears in the ordinance which was placed on the records of the town clerk by clipping a copy of the ordinance from a newspaper which had published it, is as follows:

"Be it ordained by the mayor and city of London, Kentucky, as follows."

This enacting clause, as it appears on the record, is sufficient. It is obvious that there was the omission of a word or words from the enacting clause as it appeared on the record. If the word "council" should have been inserted after the word "city," no one would seriously urge that the ordinance did not meet the requirements of the statute. The truth is that the words omitted were "city council of the," which should have been inserted just before the word "city." It appears without question that the ordinance which was passed contained these words, but the newspaper which carried the advertisement of the enactment of the ordinance omitted these words from the publication. The original ordinance is introduced in evidence and shows this to be true. It is not necessary, however, to enter into a discussion of the question whether resort may be had to the original ordinance. The enacting clause, as it appears on the record, is not sufficiently defective to render the ordinance void.

Another ground relied on by appellants is that the authority to construct streets can be exercised only in one of three ways: (1) At the cost of the city; (2) at the cost of the owners of the land fronting and abutting upon the proposed street; or (3) the city may require the property owners to pay two-thirds of the cost and the city to pay one-third. It is insisted that the city of London did not attempt to follow either of these plans. It is true that sections 3643-1 to 3643-13, Ky. Stats., provide that a city of the fifth class may follow one of the three plans mentioned in the construction of its streets.

As to what is necessary to adopt a particular plan, we will not discuss in this opinion. It is proven that the city of London had constructed streets on a different basis from that on which College street was constructed. Under the construction which took place in 1920, the taxpayers were required to pay 40 per cent. of the cost, and the city was required to pay 60 per cent. of the cost.

The city had voted a bond issue, and the money thus raised was used by the city in the payment of its portion of the cost. If it be true, as argued by appellants, that the city must adopt and follow one of the plans mentioned in the statute, it must follow that the plan of 1920 was not within the statute, and was therefore illegal, and no plan was adopted. That left the city with a free hand in 1922, when it undertook the improvement of College street.

The case of Wickliffe et al. v. City of Greenville et al., 170 Ky. 528, 186 S. W. 476, is relied on by appellants in support of their contention that a city must adopt and follow one of the plans prescribed by the statute. That opinion so holds. It follows, therefore, that so far as the ordinance required the taxpayers to pay 75 per cent. of the cost of the construction of College street, while the city was required to pay only 25 per cent., it was invalid. But that does not mean that the city may not collect two-thirds of the cost from the complaining taxpayers, instead of three-fourths of the cost.

The lower court entered a personal judgment against the appellants. This was error, as no personal judgment can be awarded against the taxpayers in such cases. The city must be satisfied by the enforcement of its lien against the property.

It is insisted that the lower court erred in adjudging the property indivisible. The court was probably justified in so holding on the face of the papers; but, since the case must be reversed, either party may introduce proof as to the divisibility or indivisibility of the property. If the property is divisible, the court should adjudge only a sale of so much thereof as will satisfy the judgment in each case.

The judgment in each case is reversed, and cause remanded, for proceedings consistent with this opinion.

Whole court sitting.